# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-585-RJC-DCK

| | |
|---|---|
| CARRA JANE PENEGAR, Executrix of the Estate of JOHNNY RAY PENEGAR, JR., individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, VERISK ANALYTICS, INC., and ISO CLAIMS PARTNERS, INC., <br><br> Defendants. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company's "Motion To Dismiss Amended Complaint And Dismiss Or Strike Class Allegations" (Document No. 51) and the "Motion Of Verisk Analytics And ISO Claims Partners To Dismiss First Amended Class Action Complaint" (Document No. 53). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motions be <u>granted</u>.

## I. BACKGROUND

Carra Jane Penegar, Executrix of the Estate of Johnny Ray Penegar, Jr. ("Plaintiff" or "Penegar") initiated this action with the filing of a "Class Action Complaint" (Document No. 1) on October 23, 2020. Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (together, "Liberty Mutual") and Defendants Verisk Analytics, Inc. and ISO

Claims Partners, Inc. (together, "Verisk") (all together, "Defendants") filed motions to dismiss on December 31, 2020. (Document Nos. 21 and 23). On April 22, 2021, the Court allowed Plaintiff leave to amend the Complaint, and thus denied the then pending motions to dismiss. (Document No. 45).

Plaintiff's "First Amended Class Action Complaint" (Document No. 46) was filed on April 26, 2021. The Amended Complaint notes that Plaintiff's husband, Johnny Ray Penegar, Jr. ("Mr. Penegar"), now deceased, was diagnosed with asbestos-related cancer, mesothelioma. (Document No. 46, p. 1). Mr. Penegar received medical care covered by Medicare. Id. Related to his alleged asbestos exposure, Mr. Penegar brought a workers' compensation claim against his employer, the United Postal Service ("UPS"), and against Liberty Mutual as the workers' compensation carrier. Id. In or about April 2016, the North Carolina Industrial Commission (the "NCIC") "found that Liberty Mutual was obligated to cover Mr. Penegar's medical expenses and to reimburse Medicare." (Document No. 46, p. 2).

On May 1, 2020, Plaintiff and Liberty Mutual executed two "Agreement(s) For Final Compromise Settlement And Release" ("Settlement Agreements") that were approved by the NCIC on June 3 and June 5, 2020. (Document No. 46, pp. 29-30); see also (Document Nos. 22-9; 52-1, pp. 55-74; and 68-1). The Settlement Agreements state that the parties agree: to "forever compromise and settle all matters and things at issue between [Plaintiff] and Defendants" … "that Defendants are responsible for the payment of such [Medicare] lien if one arises in the future" … and that "the parties hav[ing] considered all issues [] agree and place great importance on the need for finality of this litigation." (Document No. 52-1, pp. 57, 63-64).

According to the Amended Complaint, "Liberty Mutual has not reimbursed Medicare," and "Medicare has now advised Ms. Penegar that it seeks her whole workers' compensation

settlement – less than $20,000 but which represents meaningful money to her – toward satisfying the unpaid Medicare bill." (Document No. 46, pp. 2-3). Plaintiff then notes:

> To address situations like this, the Medicare statute provides for a private cause of action by which a civil litigant like Ms. Penegar may bring suit against the recalcitrant carrier who has shortchanged Medicare, for double damages. The double damages provision is meant to incentivize the private claimant to sue. Medicare can receive its share and the private claimant can still net an award. Ms. Penegar brings that claim here.

(Document No. 46, p. 3). Plaintiff seeks double damages under the Medicare as Secondary Payer Act ("MSP Act") based on Defendants' alleged "violations of their statutory duties as to the medical expenses for Mr. Penegar." (Document No. 46, p. 42-46) (citing 42 U.S.C. § 1395y(b)(3)(A)).

In addition, "Plaintiff respectfully requests certification of a class under Rule 23," alleging that Plaintiff "shares common issues with other workers' compensation claimants." (Document No. 46, p. 3).

In response to the Amended Complaint, Defendants filed renewed motions to dismiss on May 24, 2021: Liberty Mutual's "Motion To Dismiss Amended Complaint And Dismiss Or Strike Class Allegations" (Document No. 51) and the "Motion Of Verisk Analytics And ISO Claims Partners To Dismiss First Amended Class Action Complaint" (Document No. 53). Defendants seek dismissal under Fed.R.Civ.P. 12(b)(1) and (6). (Document Nos. 51 and 53).

On February 10, 2022, the undersigned ordered the parties to confer regarding the status of the case and to then file supplemental briefs focused on the issue of Plaintiff's standing to bring this action. The parties' supplemental briefs were timely filed. See (Document Nos. 68, 69, and 70).

The pending motions have now been fully briefed and are ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A. Liberty Mutual's Motion To Dismiss**

The pending motion notes that according to the Complaint, "on October 5, 2020, the Center for Medicare and Medicaid Services ("CMS") sent Plaintiff a letter that she was 'required to repay the Medicare program $18,500 for the cost of medical care it paid relating to your case.'" (Document No. 51, p. 2) (citing Document No. 1, ¶ 97); see also (Document No. 46, ¶ 97). Defendant further notes that "Plaintiff did not contact Liberty Mutual about the letter so that

5

Liberty Mutual could make the payment it long ago agreed to make"; instead, Plaintiff filed the Complaint initiating this lawsuit. Id. (citing Document No. 52-1, pp. 69-71).[1]

Defendant Liberty Mutual asserts that the Complaint "does not allege that Plaintiff paid any money to Medicare pursuant to the October 5, 2020 letter or otherwise." Id. Moreover, Defendant states that "Liberty Mutual has acknowledged it must reimburse Medicare and stands willing to do so."[2] (Document No. 51, p. 1) (citing Document No. 52-1, pp. 69-71); see also, (Document No. 21, p. 1). Liberty Mutual concludes that "Plaintiff sustained no injury-in fact and does not have standing to bring this action." (Document No. 51, p. 2).

**1. Standing Arguments**

In support of its motion, Defendant Liberty Mutual presents several arguments for dismissal. The undersigned finds that Defendant's argument regarding Plaintiff's lack of standing is compelling, and sufficient cause for dismissal.

Defendant's summary of the applicable legal standard is instructive. (Document No. 52, pp. 6-7).

> The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citations omitted).

---

[1] Plaintiff later clarifies that it *did* contact Liberty Mutual about the letter from CMS – on October 27, 2020, – four (4) days *after* filing this lawsuit, and twenty-two (22) days after receiving the letter. (Document No. 56). See also (Document No. 62, p. 6).

[2] Defendant Liberty Mutual has subsequently submitted a "Notice Of Filing" (Document No. 64) indicating that it paid CMS $25,628.01 regarding Johnny Ray Penegar, Jr. on or about August 4, 2021, and that it received a return check for $5,663.41 from CMS referencing a "Medicare Overpayment on a Medicare Secondary Payor Demand" on or about August 24, 2021. See (Document No. 64-1).

> "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* The injury must be real and not abstract. *Id.*
>
> The MSP Act "is not a qui tam statute." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). Rather, the plaintiff must have an injury in fact. *Id.* The complaint alleges that Plaintiff has standing because she is part of a class of persons, i.e. the personal representative of the estate of a Medicare beneficiary. (DE 46 at ¶56.) The complaint conflates statutory and Article III standing.
> . . .
> "Statutory standing is a requirement distinct from Article III and prudential standing." *Brass v. SPX Corp.*, 2019 WL 7373785, at *3 (W.D.N.C. 2019). "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1549.

(Document No. 52, pp. 6-7).

Liberty Mutual then notes that the Complaint "relies heavily on the split decision in *Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522 (4th Cir. 2018)." (Document No. 52, p. 8). Defendant observes that "Netro was a 'narrow holding'" and distinguishes Netro from this case. Id. (quoting Netro, 891 F.3d at 528).

As explained by Defendant, Kathy Netro brought a medical malpractice suit in state court against Greater Baltimore Medical Center ("GBMC") for negligent care of her now-deceased mother, Barbara Bromwell. See (Document No. 52, p. 8). A jury found GBMC liable for $451,956 in damages, including $156,730.75 in compensation for "conditional payments" made by Medicare. Id. (citing Netro, 891 F.3d at 525).

The Fourth Circuit noted that GBMC owed the funds to Netro and that she was obligated to pass along the portion of the state court judgment for "conditional payments" to Medicare. Id. (citing 891 F.3d at 525-26). "This monetary liability was Netro's injury under the federal statute.

7

That Netro was legally obligated to pass along the money to Medicare cannot erase the fact that GBMC owed it to her." Id. (quoting 891 F.3d at 526). The Fourth Circuit further opined that "[a]t the time the complaint was filed, GBMC had not yet paid Netro and her injury was intact." 891 F.3d at 526.

Defendant Liberty Mutual asserts that "[h]ere, in contrast, the complaint does not allege that the NCIC awarded funds to Plaintiff ultimately due to Medicare." (Document No. 52, p. 8). Moreover, the Settlement Agreements "likewise provided that Liberty Mutual was 'responsible for the payment of [a Medicare] lien if one arises in the future.'" Id. Unlike in the Netro case, where "GBMC owed it to her," in this case, Liberty Mutual is not alleged to owe money to Penegar. (Document No. 52, p. 9). Instead, the NCIC "decreed that '[t]o the extent that the deceased Plaintiff/deceased Plaintiff's estate and/or any third party, including Medicare, paid for any such treatment, Defendants SHALL reimburse such payor(s) in full.'" (Document No. 52, p. 9).

In distinguishing Netro from this case, Defendant notes that the Fourth Circuit described its decision in Netro as a "narrow holding . . . under the circumstances here." Id. (quoting 891 F.3d at 528). Defendant argues that "here, where Liberty Mutual owes, and agrees it owes, a lien asserted by Medicare, Plaintiff did not suffer an injury in fact." Id. (citing Duncan v. Liberty Mut. Ins. Co., 2019 WL 2590749, at *6 (E.D.Mich. 2019) aff'd 2021 WL 1383255 (6th Cir. 2021)).

In further support of the argument that Plaintiff did not suffer an injury, Defendant contends that the letter Plaintiff received from CMS does not "make up for the lack of an actual injury." (Document No. 52, p. 10) (citing Document No. 46, ¶¶ 4, 97). Defendant argues that the "allegations about the letter are too vague to establish an injury," and the letter does not establish "an invasion of a legally protected interest that is 'actual or imminent, not conjectural or hypothetical.'" Id. (quoting Spokeo, 136 S.Ct. at 1547).

> "CMS's right of action against beneficiaries only accrues after the beneficiary has received a primary payment." *Sexton v. Medicare*, 194 F. Supp. 3d 209, 214 (E.D.N.Y. 2016). Here, the complaint does not allege that Plaintiff recovered payment from Liberty Mutual for medical expenses paid by Medicare. Rather, the complaint alleges that Liberty Mutual was to reimburse Medicare directly. (DE 46 at ¶79.) Rather than explain this to CMS, or contact Liberty Mutual so that Liberty Mutual could make a payment, Plaintiff rushed to file a lawsuit, like in *Duncan*. In any event, under *Sexton*, a letter from CMS stating Plaintiff might owe money that, under the facts alleged in the complaint, Plaintiff does not owe to CMS cannot establish an injury in fact.

(Document No. 52, p. 10).

In addition, Defendant argues that Plaintiff has failed to "allege facts demonstrating that an injury in fact 'is likely to be redressed by a favorable judicial decision.'" (Document No. 52, p. 11) (quoting Spokeo, 136 S.Ct. at 1547). Defendant suggests that since Plaintiff has "already obtained a judicial decree that Liberty Mutual reimburse any Medicare lien," and "the parties' settlement agreement likewise requires that Liberty Mutual reimburse any Medicare lien," Plaintiff already has the relief she "seeks in this lawsuit – a ruling that Liberty Mutual reimburse CMS." (Document No. 52, p. 11).

In response, Plaintiff asserts that Liberty Mutual's standing "argument is foreclosed by *Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522, 525-26 (4th Cir. 2018) (finding standing) and *Richardson v. PCS Phosphate Co.*, No. 3:16-cv-00068-GCM, ... 2016 WL 4728109 (W.D.N.C. Sept. 9, 2016) (same)." (Document No. 56, p. 1).

Plaintiff argues that "[j]ust like Mr. Richardson, Ms. Penegar filed the current action to prosecute Liberty's failure to reimburse Medicare, not only as it promised to do in the court-approved settlement documents, but as the Industrial Commission ordered Liberty to do 'in full' in the enforceable Opinion and Awards that preceded them." (Document No. 56, p. 8). Plaintiff concludes that "[t]here is no reason for the Court to depart from its earlier decision in *Richardson*,

much less the Fourth Circuit's binding precedent in *Netro*, on the same issue of law and the same facts in the same type of case." (Document No. 56, p. 9). Plaintiff contends that "[l]ike the plaintiff in *Netro*, Ms. Penegar has 'a concrete private interest in the outcome of the suit' because Medicare stands to receive this reimbursement." Id. (quoting 891 F.3d at 526-27).

Plaintiff argues that "*Netro* controls" and that this Court should decline to follow Duncan v. Liberty Mut. Ins. Co., 854 Fed.Appx. 652(6th Cir. 2021) and Wheeler v. Travelers Ins. Co., 22 F.3d 534 (3rd Cir. 1994) because they are distinguishable. (Document No. 56, pp. 11-12). Plaintiff further argues that because Medicare's letter to Plaintiff included a demand for $18,500, that "[t]his outstanding demand, too, gives Plaintiff standing." (Document No. 56, p. 14).

In reply, Defendant argues that "[n]either the complaint nor the memorandum identify any injury to Plaintiff." (Document No. 62, p. 2). Defendant then effectively asserts the impact of the Settlement Agreements:

> Plaintiff and Liberty Mutual agreed "to forever compromise and settle all matters and things at issue between" them. (DE 52-1 at 57; 63.) In the settlement agreement and release, the parties agreed there were no disputed medical expenses. The parties agreed that Liberty Mutual was responsible for any Medicare lien. (DE 52-1 at 57.) Plaintiff released Liberty Mutual "from any and all further liability to Plaintiff by reason of any right or claim she may have, or which may hereafter arise, to reopen this claim or to claim further benefits, whether compensation, medical, death, or otherwise." (DE 52-1 at 59.) The settlement agreement and release did not except co-pays or deductibles. Rather, Plaintiff released Liberty Mutual from all claims, including for medical benefits.
>
> This release negates any notion that Plaintiff has Article III standing. Plaintiff does not, and cannot, have an injury-in-fact because she released all of her claims against Liberty Mutual. Moreover, Article III standing requires an injury that "is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at1547. Thus, even if Plaintiff had an injury-in-fact, which she does not, she would still lack Article III standing because she released all claims against Liberty Mutual. Consequently, any purported injury could not be redressed by a favorable judicial decision.

10

(Document No. 62, p. 3).

The reply further asserts that this Court's decision in Richardson, 2016 WL 4728109, at *1, as well as one of the cases it relies on – O'Connor v. Mayor & City Council of Baltimore, 494 F. Supp. 2d 372, 374 (D.Md. 2007) – are inapposite to the instant case. (Document No. 62, p. 4). "In both cases, the defendant was responsible for plaintiff's ongoing medical expenses," and thus "[t]he alleged failure of the defendants to pay for medical care was a particularized injury to Plaintiff." (Document No. 62, pp. 4-5). Defendant then argues that here "there is no ongoing treatment" and that "Liberty Mutual acknowledges and agrees it must reimburse any Medicare lien for medical charges related to the compensable injury." (Document No. 62, p. 5). "Under these facts, Plaintiff does not have standing because the Estate did not suffer an injury." Id. (citing Duncan, 2019 WL 2590749, at *6 (E.D. Mich. June 25, 2019); Wheeler v. Travelers Ins. Co., 22 F.3d 534, 538 (3rd Cir. 1994)).

Defendant also again distinguishes Netro, where, in contrast to this case, "the defendant owed the money to the plaintiff directly." Id. "At bottom, Plaintiff has no interest in this case except a motivation for 'double damages.' That, however, does not confer Article III standing." (Document No. 62, p. 6) (citing Gucwa v. Lawley, 731 Fed.Appx. 408, 413 (6th Cir. 2018); Duncan, 2019 WL 2590749, at *6)).

2. **Supplemental Authority**

On June 26, 2021, Defendant Liberty Mutual filed a "Notice Of Supplemental Authority" (Document No. 63) directing the Court's attention to the Supreme Court's opinion in TransUnion LLC v. Ramirez, 141 S.Ct. 2190 (2021), "which addresses standing in the contexts of class actions and alleged statutory violations." The undersigned notes that TransUnion LLC v. Ramirez includes the following guidance:

11

> Importantly, this Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U. S., at 341, 136 S.Ct. 1540. As the Court emphasized in *Spokeo*, "Article III standing requires a concrete injury even in the context of a statutory violation." *Ibid.*
> . . .
> For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. . . . Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court. As then-Judge Barrett succinctly summarized, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Casillas*, 926 F.3d at 332.

TransUnion LLC v. Ramirez, 141 S.Ct. at 2205.

### 3. Supplemental Briefs

After initial review of the parties' briefing on the motions to dismiss, the undersigned issued an Order (Document No. 67) directing the parties to file supplemental briefs. The Order noted that "this case presents an interesting and close legal issue regarding Plaintiff's standing" and that the undersigned was "particularly interested in the impact of the" Settlement Agreements. (Document No. 67, p. 1).

"Plaintiff's Supplemental Brief" begins by asserting that the parties' Settlement Agreements do not release Plaintiff's claim(s) in this case. (Document No. 68). Plaintiff then quotes the Settlement Agreement as follows:

> Plaintiff... certifies that she is knowingly and intentionally waiving any right to further benefits <u>under the Workers' Compensation Act</u> as a result of the injury that is the subject of this Agreement. <u>No rights other than those arising under the provisions of the Workers' Compensation Act are compromised or released under this Agreement</u>.

12

(Document No. 68, p. 1) (quoting Document No. 22-9, p. 4) (emphasis added by Plaintiff); see also (Document No. 68-1, p. 5).  Plaintiff argues that the release language "resolves Plaintiff's claims only 'by reason of or growing out of the terms and provisions of the North Carolina Workers' Compensation Act," not the MSP Act."  Id. (citing Document No. 22-9, p. 5).

The rest of "Plaintiff's Supplemental Brief" focuses on arguments that Defendant Liberty Mutual: (1) has breached the Settlement Agreements, and (2) breached "the two earlier awards, which arose years before the settlement agreement at issue here."  (Document No. 68, pp. 2-3). As such, Plaintiff seems to be attempting to raise new claims in what the Court hoped would be a narrowly tailored brief focusing on the impact of the Settlement Agreements on Plaintiff's standing.  See (Document No. 68, pp. 2-6).

"Liberty Mutual's Supplemental Brief" contends that Plaintiff's brief "largely argues the merits of the case, rather than explain how Plaintiff sustained an injury-in-fact." (Document No. 69, p. 1).  Defendant then asserts that Plaintiff failed to establish that *she* suffered harm. (Document No. 69, p. 2).  Defendant further asserts that it has "explained, in detail, the reasons Plaintiff lacks standing irrespective of the release," but that "the release further shows that Plaintiff lacks standing."  (Document No. 69, p. 2).

Regarding the Settlement Agreements, Defendant argues that "Plaintiff released all claims against Liberty Mutual and 'any other person, firm, or corporation charged or chargeable with responsibility or liability,'" . . . which would include Verisk and ISO based on allegations in the complaint."  Id. (citing Document No. 68-1, p. 6;  Document No. [46], ¶¶ 46, 60, 83, 89, 111). Defendant notes that "Plaintiff discusses only certain parts of the release," and argues that "[a] review of its entirety negates that Plaintiff has an injury-in-fact."  Defendant includes the following excerpts from the Settlement Agreement(s) addressing the full extent of the release:

13

> IN REACHING THIS AGREEMENT, the parties have considered all issues and agree and place great importance on the need for finality in this litigation. . . .
>
> release[] and forever discharge…any and all and every manner of action and actions, cause or causes of action, suits, debts, dues and sums of money, judgments, demands, and claims whatsoever . . .
>
> growing out of the terms and provisions of the North Carolina Workers' Compensation Act, on account of the injuries to and death of Decedent-Employee, which give rise to this claim for compensation, or medical bills incurred by Decedent-Employee, or on his behalf.

(Document No. 69, pp. 2-3) (citing Document No. 68-1, pp.4-6).

Defendant argues that the Settlement Agreement(s) use of the phrase "growing out of" is akin to "arising out of" and that these "are not words of narrow and specific limitation but are broad, general, and comprehensive terms." (Document No. 69, p. 3) (quoting Fid. & Cas. Co. of New York v. N. Carolina Farm Bureau Mut. Ins. Co., 192 S.E.2d 113, 118 (N.C. Ct. App. 1972)). Defendant contends that "[a] release of claims 'growing out of' releases all causes of actions arising out of the specified incident, event, law, or act." Id. (quoting M.B. Haynes Corp. v. Strand Electro Controls, Inc., 487 S.E.2d 819, 821 (N.C. Ct. App. 1997)).

Defendant also notes that the Settlement Agreement includes "a broad catch-all" in the concluding paragraph that Ms. Penegar

> knowingly and intentionally expressly agrees that Defendants are expressly and particularly released from any and all further liability to Plaintiff by reason of any right or claim she may have, or which may hereafter arise, to reopen this action or to claim further benefits, whether compensation, medical, death, or otherwise.

Id. (quoting Document No. 68-1, pp. 6-7).

Defendant argues that the Settlement Agreement "encompasses the claims here" and that this lawsuit "grows out of the terms and provisions of the Workers' Compensation Act."

14

(Document No. 69, p. 3). Moreover, Defendant argues that the MSP Act has a "harmonious relationship with state workers' compensation law" and that "[c]laims under the MSP Act piggyback off rights established under state insurance law." (Document No. 69, p. 4) (citations omitted).

Defendants Verisk Analytics and ISO Claims Partners also filed a supplemental brief, that "joins and adopts" Liberty Mutual's brief. (Document No. 70). In addition, "Verisk notes that, after much difficulty obtaining a payment amount from Medicare, Medicare has been paid and indeed returned a portion of Liberty's payment as an overpayment." (Document No. 70, p. 3). Verisk also asserts that the "provisions of the settlement agreement further underscore the absence here of a cognizable injury" and then echoes much of the language of the Settlement Agreements broadly releasing future claims against Defendants. Id. (quoting Document No. 68-1, p. 5).

Defendants argue that the Settlement Agreement applies to Verisk and ISO because it "specifically includes 'any other person, firm, or corporation charged or chargeable with responsibility or liability….'" (Document No. 70, p. 4) (quoting Document No. 68-1, p. 5). Verisk notes that the Amended Complaint "makes clear, Verisk is being sued in this litigation merely because it was alleged to be 'involved in the primary plan [i.e. , the Liberty workers' compensation plan] management.'" Id. (quoting Document No. 46, p. 20).

4. **Conclusion**

The undersigned finds Defendants' arguments and cited legal authority regarding Plaintiff's lack of standing to be compelling.

Despite Plaintiff's objections, the undersigned is inclined to agree with Defendants that the decisions from within the Fourth Circuit that Plaintiff relies on are distinguishable, and that cases

15

from the Sixth Circuit, and elsewhere, are more applicable here. For example, the undersigned finds the following decisions instructive.

> Medicare Secondary Payer Act is not a *qui tam* statute, the financial injury suffered by the government does not confer standing upon other parties. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 919 (6th Cir. 2008). Private plaintiffs must suffer their own individual harm; for instance, a private plaintiff may allege that they were paid less by Medicare than they would have been paid by the primary payer.

Gucwa v. Lawley, 731 Fed.Appx. 408, 413 (6th Cir. 2018). The undersigned also finds Duncan instructive.

> [P]laintiff lacks standing in this matter because she has failed to demonstrate the injury-in-fact element of standing. That is, plaintiff has not shown that the Estate has been personally and concretely affected by defendant's failure to pay the medical expenses at issue in this case when plaintiff first demanded that it do so. Those expenses were conditionally paid by Medicare, and defendant has committed to reimburse Medicare upon receiving a final bill. Plaintiff has not shown that the Estate "suffered an injury because [defendant] has failed to pay," *Gucwa,* 731 F. App'x at 414, either financial or otherwise.

Duncan v. Liberty Mut. Ins. Co., 2019 WL 2590749, at *6 (E.D. Mich. June 25, 2019), aff'd, 854 Fed.Appx. 652 (6th Cir. 2021).

The Seventh Circuit rendered a decision that is helpful in the context of a plaintiff seeking relief pursuant to a statutory claim:

> a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. To the contrary, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*
> . . .
> her complaint does not allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her. Indeed, on appeal she admits that the letter didn't affect her at all and that her only injury is receipt of a noncompliant collection letter.

16

Nettles v. Midland Funding LLC, 983 F.3d 896, 899-900 (7th Cir. 2020), cert. denied, 142 S.Ct. 313 (2021).

Even *if* this Court were to find that the legal authority on standing tilts in Plaintiff's favor, the undersigned is persuaded that the parties' Settlement Agreements, as addressed above, defeat Plaintiff's standing and make this action improper and unnecessary. The undersigned agrees that reading the Settlement Agreements in their entirety further negates Plaintiff's allegations of an injury-in-fact. Moreover, the parties do not identify, and the undersigned is not aware of, a case where a plaintiff executed a similar Settlement Agreement and then proceeded with claims under the MSP Act.

As the undersigned previously advised the parties, although "this case presents some close and interesting legal issues, the undersigned also observes that this entire action could have been avoided by better communication between the parties, counsel, and the Center for Medicare and Medicaid Services." (Document No. 67, p. 2). The undersigned is persuaded that the Amended Complaint fails to allege a redressable injury to Plaintiff; rather, it appears that Plaintiff and/or Plaintiff's counsel are motivated by a perceived opportunity to seek double damages, and even double damages in the context of a class action.

In short, the undersigned finds that Plaintiff lacks standing to bring the claims in the Amended Complaint and that the underlying facts and allegations do not support the relief Plaintiff seeks. The undersigned will respectfully recommend that Defendant Liberty Mutual's motion to dismiss be granted.

**B. Verisk's Motion To Dismiss**

In most pertinent part, Verisk's motion asserts that:

> For the reasons stated in Liberty's motion, Plaintiff lacks standing to sue, and Rule 12(b)(1) therefore calls for her Complaint

> to be dismissed. *See* 5/24/21 Liberty Motion to Dismiss Arg. § I (filed concurrently). Medicare paid for Mr. Penegar's treatment; Plaintiff did not. Liberty is required by the court judgment and settlement to reimburse CMS—not Plaintiff. Accordingly, Plaintiff has no cognizable injury-in-fact. *Id.* Verisk joins in Liberty's motion to dismiss on this ground and adopts Liberty's arguments in full.

(Document No. 53, p. 2).

In addition, Verisk further asserts that it is not a primary plan, but "a vendor that provides services to Liberty and other insurance carriers." Id. "Plaintiff does not, and cannot, allege that any judgment or settlement obligates Verisk—which was not a party to any of the underlying court proceedings or settlement—to make any payments for Mr. Penegar's treatment." Id.

Based on Defendant Verisk's arguments, and the undersigned's finding that Plaintiff lacks standing, the undersigned will recommend that the "Motion Of Verisk Analytics And ISO Claims Partners To Dismiss…" also be granted.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "Motion To Dismiss Amended Complaint And Dismiss Or Strike Class Allegations" (Document No. 51) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the "Motion Of Verisk Analytics And ISO Claims Partners To Dismiss First Amended Class Action Complaint" (Document No. 53) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "Plaintiff's Request For Oral Argument On Pending Motions" (Document No. 65) be **DENIED AS MOOT**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 18, 2022

David C. Keesler
United States Magistrate Judge

19
Case 3:20-cv-00585-RJC-DCK   Document 71   Filed 03/18/22   Page 19 of 19