UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00585-RJC-DCK

| | |
|---|---|
| CARRA JANE PENEGAR, Executrix of the Estate of JOHNNY RAY PENEGAR, JR., individually and on behalf of others similarly situated <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY MUTUAL INSURANCE COMPANY ET AL., <br><br> Defendants. | ) ) ) ) ) **Order** ) ) ) ) ) ) ) |

**THIS MATTER** comes before the Court on Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (Doc. Nos. 51, 53), and the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 71). Having fully considered the arguments, the record, and the applicable authority, the Court will adopt the M&R and grant Defendants' Motions to Dismiss.

**I.      BACKGROUND**

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, in addition to the background below, the Court adopts the facts as set forth in the M&R.

**A.      Factual Background**

In 2013, Plaintiff Carra Jane Penegar's husband, now deceased, was diagnosed with mesothelioma – an asbestos-related cancer. (Doc. No. 46 at ¶ 64). Mr. Penegar received treatment for his mesothelioma, paid for in relevant part by Medicare. (*Id.* at ¶ 65). In 2014, Mr. Penegar filed a workers' compensation claim before the North Carolina Industrial Commission

("NCIC") against his employer and its carrier, Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (together, "Liberty Mutual") related to his asbestos exposure. (*Id.* at ¶ 66). When he passed away in 2015, Ms. Penegar was appointed as his Executrix to represent his estate in the proceedings. (*Id.* at ¶ 74). On April 15, 2016, the NCIC Deputy Commissioner found that "[Mr. Penegar's] estate is entitled to have [Liberty Mutual] pay for all the medical treatment that [Mr. Penegar] received for his compensable mesothelioma . . . ." (*Id.* at ¶¶ 77-79). This was affirmed by the North Carolina Court of Appeals on May 1, 2018. (*Id.* at ¶ 82). Thereafter, on May 29, 2020, Ms. Penegar and Liberty Mutual entered into an agreement for final compromise settlement and release. (Doc. No. 68-1). In relevant part, the settlement and release stated that (1) Liberty Mutual paid all Medicare liens, and would be responsible for any future Medicare liens, and (2) that the Parties released any future claims growing out of the Workers' Compensation Act, including medical benefits. (*Id.*). According to Plaintiff's Amended Complaint, "Liberty Mutual has not reimbursed Medicare" pursuant to the NCIC's judgment. (*Id.* at ¶3). As a result, the Center for Medicare and Medicaid Services ("CMS") sent Ms. Penegar a letter requesting reimbursement in the amount of the $18,500 workers' compensation settlement. (*Id.* at ¶¶96-97).

B.  **Procedural Background**

Without informing Liberty Mutual about the letter from CMS or requesting payment, Plaintiff filed this action against Liberty Mutual, Verisk Analytics, Inc., and ISO Claims Partners, Inc. (together, "Verisk[1]") (all together, "Defendants"), seeking double damages under the Medicare as Secondary Payer ("MSP") Act on October 23, 2020. The MSP Act provides a

---

[1] Plaintiff named Verisk Analytics and ISO Claims Partners as Defendants due to their role in managing the workers' compensation plan and Medicare reporting for Liberty Mutual. (Doc. No. 46 at n.4)

private cause of action for individuals where a primary payer[2] fails to reimburse Medicare when required. *See* 42 U.S.C. § 1395y(b)(3)(A).[3] On May 24, 2021, Defendants refiled their Motions to Dismiss Plaintiff's Amended Complaint after their original motions became moot. (Doc. Nos. 51, 53). In its motion, Liberty Mutual did not contest that it had to reimburse Medicare. (Doc. No. 51 at 1). Indeed, after Plaintiff filed this action Liberty Mutual did reimburse Medicare. (Doc. No. 70 at 3). Rather, Liberty Mutual argued that Plaintiff lacks Article III standing to bring this suit because she lacks a cognizable injury in fact. (Doc. No. 52). The Magistrate Judge agreed and recommended granting Defendants' Motions pursuant to Rule 12(b)(1). (Doc. No. 71). Plaintiff objects, arguing that she has statutory standing pursuant to 42 U.S.C. § 1395y(b)(3)(A) and constitutional standing under *Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522 (4th Cir. 2018). (Doc. No. 72).

## II. STANDARD OF REVIEW

### A. Memorandum and Recommendation

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C.

---

[2] The results of the workers' compensation litigation effectively delegated Liberty Mutual as a "primary payer" for the purposes of reimbursing Medicare for the medical expenses incurred by Mr. Penegar.

[3] Congress enacted the MSP Act in 1980 to address "ballooning medical entitlement costs" that resulted from Medicare acting as a primary payer and providing coverage for all of its beneficiaries' medical treatments, even if a private party such as an insurer was also responsible. *Netro*, 891 F.3d at 524. "The MSP Act inverted that system and made Medicare an entitlement of last resort, available only if no private [party] was liable." *Id.* (quoting *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016)) (internal quotations omitted). The purpose of the statute is "to help the government recover conditional payment from insurers or other primary payers", reasoning that beneficiaries may be more aware if another entity may be responsible to pay their expenses. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 524 (8th Cir. 2007). The double damages provision provides motivation for beneficiaries to "take arms against a recalcitrant insurer." *Id.*

§ 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.* Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72, advisory committee note).

### B. Motion to Dismiss Under Rule 12(b)(1)

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The plaintiff has the burden of proving that subject matter jurisdiction exists. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991). The district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is

entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

### III. DISCUSSION

The standing doctrine derives from Article III of the Constitution, which "confines the federal judicial power to the resolution of 'Cases' and 'Controversies'". *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting U.S. CONST. art. III § 2). The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)) (internal citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan* 504 U.S. at 560).

Statutory standing is a requirement distinct from Article III and prudential standing. *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013). "Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of doing so." *CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (quoting *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir. 2007)). "Statutory standing applies only to legislatively-created causes of action and concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail [itself] of that right of action." *Mayor of Balt. v. Actelion Pharms., Ltd.*, No. GLR-18-3560, 2019 WL 4805677,

at *7, 2019 U.S. Dist. LEXIS 169774 at *15 (D. Md. Sept. 30, 2019) (quoting *CGM*, 664 F.3d at 52).

While courts must respect Congress's decision to create legally cognizable injuries, it is well settled that statutory standing alone does not confer Article III standing. *See TransUnion*, 141 S. Ct. at 2204; *Spokeo*, 578 U.S. at 339-41 (holding that a plaintiff does not automatically satisfy the injury in fact requirement whenever a statute grants a person a right). Stated differently, "injury in fact is a constitutional requirement, and '. . . Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 578 U.S. at 339 (quoting *Raines v. Byrd*, 521 U.S. 811, 820, n.3 (1997)).

An exception to the injury in fact requirement are *qui tam* actions, which allow private plaintiffs to sue in the government's name for the violation of a public right. *See Vermont Agency of Natural Resources v. United State ex rel. Stevens*, 529 U.S. 765, 773-774 (2000). There is broad consensus among the circuits that the MSP Act is not a *qui tam* statute. *See Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522, 527 (4th Cir. 2018); *Stalley ex rel U.S. v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008); *Stalley v. Methodist Healthcare*, 517 F.3d 911, 918 (6th Cir. 2008); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 522 (8th Cir. 2007); *United Seniors Ass'n v. Phillip Morris USA*, 500 F.3d 19, 24 (1st Cir. 2007). Therefore, in order to proceed in the current action, Ms. Penegar must be able to demonstrate that she suffered an injury in fact.

Here, Ms. Penegar does not allege that she paid any money to Medicare pursuant to CMS' letter requesting reimbursement nor that CMS took any action against her aside from sending the letter. (Doc. No. 51). Indeed, Ms. Penegar failed to point to any concrete injury she

has suffered. Rather, she argues she has standing by relying almost entirely on the Fourth Circuit's decision in *Netro v. Greater Baltimore Medical Center*, 891 F.3d 522 (4th Cir. 2018).[4] (Doc. No. 46).

In *Netro*, plaintiff brought a medical malpractice suit in state court against the defendant medical center for its negligent care of plaintiff's mother. *Id.* at 524. As part of plaintiff's favorable court judgment in state court, the defendant became liable for conditional payments Medicare made for plaintiff's mother's treatment. *Id.* Notably, the state court ordered the defendant to make these payments to the plaintiff directly, and the plaintiff would pass along that portion of the judgment to Medicare. *Id.* at 525. Three weeks after the state court entered its final order, the plaintiff sued defendant in federal court under the MSP Act for defendant's failure to satisfy the judgment. *Id.* at 524. The defendant argued that plaintiff lacked standing because the money was owed to Medicare, not to her. *Id.* at 525. The Fourth Circuit disagreed and narrowly held that, under those facts, plaintiff suffered an injury:

> Under the MSP Act, [defendant] became responsible for the costs of Bromwell's medical care when the state court adjudged it liable for medical malpractice. Under the terms of the state court judgment, the money owed to Bromwell's estate included the funds ultimately due to Medicare. This monetary liability was Netro's injury under the federal statute. That Netro was legally obligated to pass along the money to Medicare cannot erase the fact that [defendant] owed it to her.

*Id.* at 526.

*Netro*'s outcome relied on this key fact – that the defendant owed the funds (that were ultimately due to Medicare) to the plaintiff. Netro's obligation to reimburse Medicare with a

---

[4] Plaintiff also relies on *Richardson v. PCS Phosphate Co.*, No. 3:21-cv-00068-GCM, 2016 WL 4728109, at *3 (W.D.N.C. Sept. 9, 2016) (Mullen, J.), in which the court concluded that plaintiff Medicare beneficiary had standing to sue a primary payer under the MSP Act when the primary payer failed to reimburse Medicare on plaintiff's behalf. However, the non-binding *Richardson* case was decided before the Fourth Circuit's narrow holding in *Netro*.

portion of the state court judgment, and defendant's failure to timely pay, ultimately constituted her injury in fact. Here, the NCIC did not order Liberty Mutual to pay Ms. Penegar for any outstanding Medicare liens. Rather, Liberty Mutual was ordered to reimburse Medicare directly. (Doc. No. 52, Exhibit 2 at 16).[5] Thus, Liberty Mutual was liable to Medicare, not Ms. Penegar. Neither Liberty Mutual's failure to reimburse Medicare nor CMS' letter requesting reimbursement caused any injury to Plaintiff or changed the effect of the judgment, which caused Liberty Mutual to be solely liable for the medical payments. Therefore, *Netro* is distinguishable from the instant case and Ms. Penegar failed to demonstrate that she has suffered an injury in fact.

The Parties' Settlement Agreement further convinces the Court that Ms. Penegar does not have standing to bring this action. The Parties' Settlement Agreement contains a release, which states in relevant part:

> IN REACHING THIS AGREEMENT, the parties have considered all issues and agree and place great importance on the need for finality in this litigation. …
>
> release[] and forever discharge… any and all and every manner of action and actions, cause or causes of action, suits, debts, dues and sums of money, judgments, demands, and claims whatsoever …
>
> growing out of the terms and provisions of the North Carolina Workers' Compensation Act, on account of the injuries to and death of Decedent-Employee, which give rise to this claim for compensation, or medical bills incurred by Decedent-Employee, or on his behalf.

(Doc. No. 68-1 at 4-6).

---

[5] "To the extent that deceased … Plaintiff's estate and/or any third party, including Medicare, paid for any such treatment, Defendants SHALL reimburse such payor(s) in full." (Opinion and Award by Robert J. Harris, Deputy Commissioner, N.C. Industrial Commission) (affirmed by the Full Commission and the North Carolina Court of Appeals).

This action falls squarely under the release. Plaintiff released any claim "growing out of" the North Carolina Worker's Compensation Act, including medical bills incurred by Mr. Penegar. *See Fid. & Cas. Co. of New York v. N. Carolina Farm Bureau Mut. Ins. Co.*, 192 S.E.2d 113, 118 (N.C. Ct. App. 1972). This dispute originates from Mr. Penegar's diagnosis of mesothelioma, and the subsequent workers' compensation claim that followed, and specifically seeks payment for the medical bills incurred by Mr. Penegar.[6] Accordingly, Plaintiff failed to demonstrate that she has a redressable injury in fact since her action is barred by the release.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R (Doc. No. 71) is **ADOPTED**;
2. Defendants' Motions to Dismiss (Doc. Nos. 51, 53) is **GRANTED**; and
3. Plaintiff's Motion for Hearing (Doc. No. 65) is **DENIED as moot**.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

Robert J. Conrad, Jr.
United States District Judge

---

[6] The Plaintiff did not bring a breach of contract claim and the Court declines to opine whether the release bars such a claim.